IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 1:23-MJ-00062 |
| | ) | |
| ISAAC AKU, | ) | The Honorable William E. Fitzpatrick |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE**
**IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS**

The defendant, Isaac Aku ("defendant"), moves to challenge the validity of his arrest, and suppress evidence regarding the voluntariness and validity of his field sobriety test. He also seeks to suppress statements he believes were obtained in violation of the Fifth Amendment and *Miranda v. Arizona*, 384 U.S. 436 (1966). The defendant also presents four objections which go to the weight and non-admissibility of some of the government's evidence. As discussed in detail below, the officers who arrested the defendant had the necessary reasonable suspicion to detain him for field sobriety tests and, following the defendant's failure of those tests, probable cause to arrest him. Next, none of the defendant's statements to the responding officers were made in violation of the Fifth Amendment or *Miranda* because the defendant was either not in custody or voluntarily responding to the officer's administrative orders. Finally, the defendant fails to demonstrate why any of the other evidence he discusses in his motion is so unreliable that it needs to be suppressed prior to trial. As such, the Court should deny the defendant's motion.

## FACTUAL BACKGROUND

On or about December 31, 2022, at approximately 4:40 A.M. the defendant caused a four-car motor vehicle collision on the George Washington Memorial Parkway. Upon investigation by United States Park Police ("Park Police") officers, it was determined that the defendant crashed into the back of a vehicle with such force that the vehicle hit a third car, and the third car hit a fourth. The three vehicles owned and operated by the victims (V-1, V-2, and V-3) had all come to a complete stop prior to the collision due to road repair activity and a previous accident. They had been stopped for approximately a minute prior to the defendant colliding with them. Several vehicles were badly damaged; V-1's vehicle was totaled, and she sustained injuries. Park Police officers were already on the scene addressing that earlier accident.

Body cam footage from three Park Police officers depicts a loud "bang" at the time of the collision. Officers reacted to the bang and were on scene within about 30 seconds. The body camera footage shows that as soon as the first officer arrived, the defendant was standing next to the driver-side door of his vehicle. Officers immediately assessed the damage and injuries for those involved. While speaking with the defendant, officers observed behavior and characteristics consistent with intoxication. These observations included slurred speech, difficulty following instructions, trouble standing and an odor of alcohol emanating from the defendant's person and breath. The observations were so apparent that one officer directly asked the Defendant whether he had been drinking that night, to which the Defendant responded "yes." Through further questioning, the Defendant revealed that he had begun drinking alcohol at around 7 or 8 pm that night, and that he had "f[*]cked up." At this point, or any time prior, the Defendant was not under arrest nor told that he was under arrest.

As a result of the above circumstances, an officer, with his supervisor present, conducted a field sobriety test on the scene. The officer administered three phases of the test: (1) Horizontal Gaze Nystagmus ("HGN") and Vertical Gaze Nystagmus ("VGN"); (2) Walk and Turn ("WAT"); and (3) One Leg Stand ("OLS"). On the first test, the defendant's eyes both jerked slightly as he looked in either direction. On the second test, the defendant could barely keep balance, took more steps than instructed, and never turned around as he was told. On the third test, the defendant swayed back and forth while balancing, and had to put his foot down twice. Based on a totality of the circumstances, responding officers found that the defendant was intoxicated. As such, the defendant was immediately put in handcuffs and placed under arrest. The defendant refused to take a breathalyzer and signed a form indicating his refusal to do so. After his arrest, the defendant was belligerent with officers, cursing and yelling at them.

## ARGUMENT

I. <u>The officers had probable cause to arrest the defendant and the field sobriety tests were not a search or seizure and did not require the defendant's consent.</u>

An officer may stop and briefly detain a person for investigative purposes when he or she has a "reasonable suspicion," based on articulable facts that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). To meet this standard, the officer "must be able to articulate something more than an 'inchoate and unparticularized suspicion' or 'hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry*, 392 U.S. at 27).

When Officer Tyler Eding approached the scene of the accident, his body camera shows the defendant's vehicle's driver seat door open. The defendant is standing right next to that open door. When Officer Eding asks the defendant for his insurance information, he struggles for several minutes searching for his insurance to no avail. Slurring his words, he states that he does not have his insurance, but is in the United States Army and his unidentified insurance company

3

will pay for the accident.  Later, Officer Leonas asked the defendant if he had been drinking, to which the defendant responded "yes."  In addition, Officer Eding, and his supervisor Sergeant Kenneth Leonas, observed that the defendant had bloodshot eyes and smelled like alcohol.

Given this behavior, the officers had sufficient evidence to stop the defendant and conduct a further inquiry into whether the defendant had operated his vehicle in a manner that violated the law.  *See Jones, Ronald v. Commonwealth*, 279 Va. 52, 688 S.E.2d 269 (2010); *ohlford v. Commonwealth*, 3 Va. App. 467, 351 S.E.2d 47 (1986); *Clarke v. Commonwealth*, 32 Va. App. 286, 527 S.E.2d 484 (2000); *see generally Terry*, 392 U.S. at 2.  Indeed, the Fourth Circuit, along with others, has found that dangerous driving, bloodshot and glassy eyes, exhibiting and odor of alcohol, making odd motions, and failing to comply with instructions may be sufficient for probable cause to initiate an arrest for driving while intoxicated – even without a field sobriety test.  *See United States v. Walker*, 607 F. App'x 247, 253-54 (4th Cir. 2015); *Ankele v. Hambrick*, 136 F. App'x 551, 552-53 (3d Cir. 2005) (probable cause existed to arrest a defendant for driving under the influence when the officer observed that the defendant walked with a "staggered gait," had bloodshot eyes, had alcohol on his breath, and admitted that he had been drinking alcohol); *Otero v. Town of Southampton*, 194 F. Supp. 2d 167, 172, 178 (E.D.N.Y. 2002), *aff'd*, 59 F. App'x 409 (2d Cir. 2003) (probable cause existed to arrest a defendant for driving while intoxicated when a police officer observed that a bus driver crossed a double yellow line, made a wide turn into an oncoming lane of traffic, and fell to the ground when exiting his bus).

In this instance, the responding officers opted to temporarily, and legally, detain the defendant to continue their investigation.  *See Rogala v. District of Columbia*, 161 F.3d 44, 52 (D.C. Cir. 1998) ("detention for a field sobriety test is a minimal intrusion on an already legally

stopped individual's privacy, . . . many state courts have held that an officer may detain a motorist for such testing so long as there is reasonable suspicion that the driver may be intoxicated."); *Wilder v. Turner*, 490 F.3d 810, 815 (10th Cir. 2007) ("A field sobriety test is a minor intrusion on a driver only requiring a reasonable suspicion of intoxication and 'an easy opportunity to end a detention before it matures into an arrest.'" (quoting *Miller v. Harget*, 458 F.3d 1251, 1260 (11th Cir. 2006)); *United States v. Clark*, No. 20-CR-213, 2021 WL 5310995, at *10 (D. Minn. Sept. 17, 2021), report and recommendation adopted, No. CR 20-213 (MJD/LIB), 2021 WL 5310708 (D. Minn. Nov. 15, 2021) (an illegal U-turn created an objectively reasonable basis for suspicion of additional criminal activity sufficient to briefly stop the defendant in order to confirm his identity, conduct a *Terry* pat-down search of the defendant for weapons and, upon noticing the defendant's nervousness, perform a field sobriety test).

      The defendant performed three tests at the direction of Officer Eding – the one leg stand, the walk and turn, and the horizontal and vertical nystagmus. He exhibited numerous behaviors indicating intoxication. *See generally Wilder*, 490 F.3d at 815 ("A prudent officer could reasonably conclude from plaintiff's refusal to participate in a field sobriety test coupled with the observation of several indicators of excessive alcohol consumption that plaintiff was under the influence of alcohol."); *Harget*, 458 F.3d at 1260.

      The defendant's demeanor and responsiveness during these tests was only one of several factors, which further added to the officers' probable cause for arrest. *See, e.g.*, 1 Donald H. Nichols & Flem K. Whited III, Drinking/Driving Litigation § 5:5 (2d ed. 2006) ("Following a stop the officer will be looking for additional information to establish probable cause for arrest. Information an officer may use to establish probable cause includes an erratic driving pattern or a driving offense accompanied by various symptoms of intoxication. Poor performance on the

field sobriety test, an odor of alcohol on the breath, unsteadiness, a flushed face, and bloodshot eyes are factors that following a stop constitute adequate grounds for arrest." (footnotes omitted)).  As noted above, before the defendant took the field sobriety test, the responding officers already observed the defendant crashed his car into a stopped vehicle at a high rate of speed, smelled of alcohol, slurred his words, and admitted to drinking.  This was ample evidence to first detain the defendant for a field sobriety tests on reasonable suspicion, and then, ultimately, obtain probable cause to arrest him for the charged crimes when he failed those tests. *See generally Walker*, 607 F. App'x at 254; *United States v. Montieth*, 662 F.3d 660, 665 (4th Cir. 2011); *Saundry v. United States*, No. 4:07-CR-175, 2008 WL 1733269, at *1 (E.D. Va. Apr. 8, 2008) (the preliminary breathalyzer test, along with the officer's observations, provided the basis for "reasonable suspicion" to administer the field sobriety tests, the results of which provided the probable cause for the appellant's arrest.).

II.     The defendant's statements were given freely and did not implicate his Fifth Amendment Rights

When seeking suppression, the defendant bears the burden of proving by a preponderance of the evidence that the statements at issue were made during a custodial interrogation. "The burden of production and persuasion generally rests upon the movant in a suppression hearing," and the defendant must prove as an initial matter that he was "in custody" at the time the statements at issue were made. *United States v. Charles*, 738 F.2d 686 (5th Cir. 1984); *see also Colorado v. Connelly*, 479 U.S. 157, 168 (1986); *United States v. Williams*, 1991, U.S. App. LEXIS 23535 (4th Cir. Oct. 8, 1991) (unpublished) ("Both the burden of production and the burden of persuasion generally rest on the movant in a suppression hearing."); *United States v. Lawrence*, 1989 U.S. App. LEXIS 19087 (6th Cir. Dec. 18, 1989) (unpublished) ("Where a party seeks suppression of his statements based upon failure to receive his *Miranda* warning, he must

demonstrate by a preponderance of evidence that he was entitled to receive them; i.e., that he was subjected to a 'custodial interrogation.'").

Under *Miranda v. Arizona*, an accused has a Fifth and Fourteenth Amendment right to remain silent and have counsel present during a custodial interrogation. 384 U.S. 436, 479 (1966). The ultimate inquiry for determining that an interrogation is custodial is whether there is a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotations omitted). The first step to resolving this inquiry is to ask "whether a reasonable person would have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Pressley*, 990 F.3d 383, 388 (4th Cir. 2021). Next, if the answer to this inquiry is "no," then a court must ask "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Howes v. Fields*, 565 U.S. 499, 509 (2012). Further, "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" does not constitute a custodial interrogation. *Miranda*, 384 U.S. at 477-78.

The defendant's brief does not state when he believes he was first placed in custody. Nevertheless, it is clear that the defendant was first placed in custody at the end of the sobriety tests administered by Officer Eding. *See Berkemer v. McCarty*, 468 U.S. 420 (1984) (persons temporarily detained pursuant to routine traffic stops are not in custody for *Miranda* purposes); *Ramos v. Commonwealth*, 30 Va. App. 365, 516 S.E.2d 737 (1999); *Cherry v. Commonwealth*, 14 Va. App. 135, 415 S.E.2d 242 (1992) (quoting *McCarty*); *see also supra* Part I. At this point, Officer Eding's body worn footage shows he placed the defendant in handcuffs and helped him into a Park Police vehicle. Prior to this point, the officers had not decided to charge the

7

defendant and were still investigating whether he had violated the law.  *See Gibson v. Commonwealth*, 57 Va. App. 772, 780, 706 S.E.2d 541 (2011) ("[N]either the physical components of the field sobriety tests nor Gibson's inability to perform them constitute a testimonial communication. . . . They only required him to exhibit certain physical characteristics. . . . [B]oth the one-legged stand component and the nine-step walk and turn component are synonymous with assuming a stance and walking, actions the Supreme Court has specifically recognized as non-testimonial communications."); *supra* Part I.  The defendant was standing outside his vehicle at the scene of the accident, trying to answer Officer Eding's questions, and was free of any restraint.  Any statements made during this *Terry* stop, which includes the field sobriety tests, *see id; supra* Part I, are admissible as non-custodial statements.  *See United States v. Leshuk*, 65 F.3d 1105, 1109-10 (4th Cir. 1995) (statements made during a *Terry* stop were admissible and observing that "we have concluded that drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes"); *Gibson*, 57 Va. App. at 780.

      After the defendant was arrested, not one of the officers sought an incriminating statement from him, even after Park Police Officer Carlton Robinson read the defendant his *Miranda* rights.  Everything the defendant said and did from the time he was placed in handcuffs until he was read his *Miranda* rights was a voluntary response to lawful Park Police directions designed to facilitate the processing of the defendant's arrest.  It was only after Officer Robinson read the defendant his *Miranda* rights that Officer Robinson requested the defendant take an alcohol breathalyzer test.  At that point, the defendant declined to do so without his attorney several times.  Although the defendant invoked his right to an attorney, his refusal to take the

8

requested breathalyzer test is still admissible at trial. *See United States v. Reid*, 929 F.2d 990, 994 (4th Cir. 1994) ("admission of a defendant's refusal to take a breathalyzer test" is admissible evidence in a DWI trial. (Citing *South Dakota v. Neville*, 459 U.S. 553 (1983))); *Lamay v. Commonwealth*, 29 Va. App. 461, 513 S.E.2d 411 (1999) (driver suspected of DUI shall submit to a breath test). After this point, the defendant was not asked any more substantive questions.

III.  Contesting the sufficiency of the evidence is improper at this stage.

The defendant's motion also "demands sufficient proof of the DWI element of driving a motor vehicle;" insists that the government show its "officers were properly trained to administer the field sobriety test;" challenges the reliability of the nystagmus and the walk and turn sobriety tests; and questions the specificity of the officers' statements concerning the defendant's slurred speech and alcoholic odor. These positions challenge the weight or credibility of specific pieces of evidence the government produced via discovery and may seek to admit at trial. None of the reasons proffered by the defendant are adequate to suppress that evidence, especially before trial.

The defendant's "sufficient proof" "demand," is meritless. "There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992); *accord United States v. Guerrier*, 669 F.3d 1, 4 (1st Cir. 2011); *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009); *United States v. Ferro*, 252 F.3d 964, 968 (8th Cir. 2001); *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996); *United States v. Gadsden*, Crim. No. 11-cr-302, 2013 WL 3776994, at *3 (D. Md. July 17, 2013) (unpublished); *United States v. Witasick*, No. 4:07-cr-30, 2008 WL 1924023, at *2 (W.D. Va. Apr. 28, 2008) (unpublished); *see also United States v. Souder*, Nos. 08-cr-136 & 08-cr-275, 2009 WL 88919, at *7 (M.D.N.C. Jan. 12, 2009) (unpublished) (discussing cases in which federal courts have considered evidentiary

proffers in connection with pretrial challenges to criminal charges).  If an indictment sets forth the essential elements of the offense in sufficient detail so as fairly to inform the defendant of the nature of the charge, then it is immune from attack on a motion to dismiss.  *See Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994) (same); *United States v. Hooker*, 841 F.2d 1225, 1231 (4th Cir. 1988) (same); *United States v. Brandon*, 150 F. Supp. 2d 883, 884 (E.D.V.A. 2001).

The government's criminal information states that on December 31, 2022, within the Eastern District of Virginia and the special maritime and territorial jurisdiction of the United States, "the defendant, . . . , did unlawfully operate a motor vehicle while under the influence of alcohol, drugs, and any combination thereof, to a degree that rendered [the defendant] in capable of unsafe operation."  Taking this statement of facts as true, each element of the charged offense is adequately, plainly, and concisely alleged.  This is sufficient to address the defendant's "demand" that sufficient evidence be presented concerning the "driving" element of the defendant's charged DUI.[1]

The defendant's remaining three contentions are also properly resolved at trial.  At trial the government will be offering evidence showing that the responding officers were properly trained to conduct sobriety tests.  The sobriety tests conducted here – when combined with other evidence – are probative, and the officer's observations of the defendant's demeanor were truthful.  Using the testimony of Officer Eding and his supervisor, Sergeant Leonas, the government will lay the foundation necessary to demonstrate that both officers have received the training required to conduct accurate field sobriety tests and executed, or supervised, those tests

---

[1] The defendant's motion repeatedly refers to a Driving While Intoxicated charge.  The government notes that the information, in fact, charges the defendant with Driving Under the Influence of alcohol ("DUI").

in accordance with that training. Next, the government will present evidence both through body-camera footage and witness testimony that will demonstrate that the defendant failed those tests and exhibited other signs of intoxication such as bloodshot eyes, slurred speech and emitting an odor that smelled like alcohol.

This testimony is admissible. A police officer may testify as a lay witness to his or her observations of a subject's performance of standard field sobriety tests if the officer is properly trained and the tests are properly administered. For example, in *United States v. Cedillo*, Judge Giles recently concluded that "[a] police officer who is trained and qualified to administer . . . the standardized field sobriety tests can testify about . . . his or her own observations of the subject's performance of these tests as long as they are properly administered, and that includes the HGN test as well as [the walk and turn test]." No. 1:21-mj-374 (E.D. Va. June 14, 2022), ECF No. 77 (Trial Tr. at 77); *United States v. Daras,* 164 F.3d 626 (4th Cir. 1998) (unpublished) (holding that lay testimony concerning the walk and turn test and one leg stand test is admissible but not deciding whether lay witness testimony concerning an HGN test is admissible); *see also United States v. Saint-Surin*, No. 1:17-CR-75 (GBL), 2017 WL 2728035, at *5 (E.D. Va. June 22, 2017) (noting that lay witness testimony is appropriate for standard field sobriety tests, including the HGN test)[2]; *United States v. Francisco*, No. 4:06-MJ-097-WEJ, 2008 WL 11340065, at *8 (N.D. Ga. Aug. 18, 2008), *aff'd*, No. 4:08-CR-042-01-HLM, 2010 WL 11520594 (N.D. Ga. Feb. 23,

---

[2] The Court can also take judicial notice that there is a "causal connection between the ingestion of alcohol and the detectable presence of exaggerated horizontal gaze nystagmus in a person's eyes, . . . pursuant to Fed. R. Evid. 201." *United States v. Saint-Surin*, No. 1:17-CR-00075 (GBL), 2017 WL 2728035, at *5 (E.D. Va. June 22, 2017) (quoting *United States v. Horn*, 185 F. Supp. 2d 530, 533 (D. Md. 2002)). However, "[i]f the Government introduces evidence that a defendant exhibited nystagmus when the officer performed the horizontal gaze nystagmus test, the defendant may bring out either during cross examination of the prosecution witnesses or by asking the Court to take judicial notice of the fact that there are many causes of nystagmus other than alcohol ingestion." *Horn*, 185 F. Supp. 2d at 533.

2010), aff'd, 413 F. App'x 216 (11th Cir. 2011) (Officer opinion of a defendant's performance on standard field sobriety tests is "within the realm of lay testimony.").

## CONCLUSION

For the foregoing reasons, Court should deny the Defendant's Motion to Suppress Evidence.

Respectfully submitted,

Jessica Aber
United States Attorney

By:  /s/
Jacques Singer-Emery
Special Assistant United States Attorney
Andres E. Chinchilla
Special Assistant United States Attorney
April Russo
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office: (703) 299-3913
Fax: (703) 299-3980
Email: jacques.singer-emery2@usdoj.gov

**Certificate of Service**

I hereby certify that March 16, 2023, I electronically filed a copy of the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of electronic filing (NEF) to all counsel of record.

By: _____/s/_____

Jacques Singer-Emery
Special Assistant United States Attorney